UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

J.H.,

       Plaintiff,

v.                                          Case No. 20-3995E

SCHOOL BOARD OF
ORANGE COUNTY, FLORIDA,

       Defendant.

_____/

**COMPLAINT**

Plaintiff, J.H., by and through his undersigned counsel, files this Complaint against

Defendant, School Board of Orange County and shows as follows:

**INTRODUCTION**

1.      This action arises under the Individuals with Disabilities Act, 20 U.S.C. § 1400 et

seq. (hereinafter "IDEA").

2.      This is an original civil action, seeking reversal of the Final Order of Dismissal, dated

September 29, 2020, of a Florida Administrative Law Judge (hereinafter "ALJ"), a true and correct

copy of which is attached hereto as Exhibit A.

3.      Plaintiff was a minor child when the case in controversy began.  Prior to the Power of

Attorney (hereinafter "POA") filing the Due Process Complaint on Plaintiff's behalf, Plaintiff

reached the age of majority.  Plaintiff was and is a student with a disability who is eligible for special

education and is entitled to the services and protections of the IDEA.

4.      Plaintiff is an aggrieved person based on the decision of an administrative action

following Plaintiff's request for due process and an administrative hearing with Florida's Division of

Administrative Hearings (hereinafter "DOAH").

5.     The Defendant must assure that families receive from the Local Education Agency (hereinafter "LEA") notice of a number of their procedural safeguards including and especially the ability to file what is termed *A Request For A Due Process Hearing* with the Florida Department of Education (hereinafter "SEA"). This procedural safeguard assures that the SEA appoint a Special Education Hearing Officer to hear and adjudicate complaints if they believe their child has not received a Free Appropriate Public Education (hereinafter "FAPE") or to have such complaints addressed in mediation. 20 U.S.C. §1415(b)(5), (6).

6.     Under IDEA, a State "may provide that, when a child with a disability reaches the age of majority under State Law ... all other rights accorded to parents under this subchapter transfer to the child." 20 U.S.C. § 1415(m)(1).  In Florida, "at age eighteen (18), all other rights afforded to parents under Part B of the Individuals with Disabilities Education Act transfer to the student, unless the student has been determined to be incompetent under state law as established by Chapter 744, Fla. Stat. (2020), or a guardian advocate has been appointed to make decisions affecting educational services as provided by § 393.12, F.S."  Florida Administrative Code Rule 6A-6.03311(10) (2014), Procedural Safeguards for Students with Disabilities.  Prior to the transfer of rights, Districts must explain these rights in detail to the individual with disabilities and their parents or guardians, promoting least restrictive methods, looking to Guardianships when no other lesser restrictive method is suitable.

7.     For the rights not to transfer to a student with a disability at the age of majority, a guardianship or a guardian advocacy must be in place.  However, competency is presumed and any competent individual in the state of Florida can appoint a power of attorney to assist in decision making upon turning 18.  Under the façade of "transfer of rights" Districts are unnecessarily pushing individuals with disabilities into guardianships when there are less

restrictive options available.  Individuals with disabilities are legally entitled to make his/her own decisions upon reaching the age of majority.  He/she can exercise that legal right and appointed a power of attorney to assist him/her in educational decision making pursuant to Chapter 709 of the Florida Statutes or, a supported decision making team (hereinafter SDM) can be assembled to achieve that same end.

8.      Capacity is presumed in Florida unless an individual has been declared incompetent by Chapter 744 of the Florida Statutes.  § 744.331, Fla. Stat. (2020), outlines the procedure to have an adult deemed incapacitated in Florida. The statute requires that the family member or other concerned party file a petition to determine incapacity with a Florida court. That person must also file a petition for appointment of guardianship.

9.      Incapacity is a statutorily defined term. A person is legally incapacitated when determined by the guardianship court to lack the capacity to manage at least some property or to meet at least some of his or her essential health and safety requirements. § 744.102(12), Fla. Stat. (2020).  "In determining incapacity, the court shall consider the person's unique needs and abilities and may only remove those rights that the court finds the person does not have the capacity to exercise." § 744.331(6), Fla. Stat. (2020).

10.     The guardianship court is defined by statute as the "circuit court."  § 744.102(5) (2020).

11.     Chapter 709, Florida Statutes creates a Power of Attorney.  A power of attorney is a legal document that allows the maker "the principal" to appoint an "agent" to act on his or her behalf.  The legal document itself provides what powers have been delegated to the agent by the principal.

12.     A Durable Power of Attorney (hereinafter DPOA) is a power of attorney that does not terminate upon incapacity. § 709.2102(4), Fla. Stat. (2020).

13.     One area in which a power of attorney can be executed is with respect to property or property interests.  Students have a property interest in education and cannot be denied that interest without due process of law.  *Goss v. Lopez*, 419 U.S. 565 (1975).  At a minimum, a student facing a deprivation in their property interest, in this instance his education, due process of law requires notice and a hearing.  *Id.* at 581.

14.     Pursuant to § 709.2106, Fla. Stat. (2020), a power of attorney executed on or after October 1, 2011, is valid if its execution complies with § 709.2105, Fla. Stat. (2020). To comply with this section, the agent must be an individual who is 18 years of age or older, must be signed by the principal and by two subscribing witnesses and be acknowledged by the principal before a notary public or as otherwise provided in § 695.03, Fla. Stat. (2020).

15.     § 709.2120, Fla. Stat. (2020) provides the methods with which a power of attorney may be refused.  An individual who chooses to refuse a power of attorney must follow that statutory mechanism to do so.

### PARTIES

16.     At all times relevant herein, Plaintiff, has resided in Apopka, a city in Orange County within the boundaries of the School District of Orange County, Florida. Plaintiff has been, and continues to be, eligible to receive special education and related services pursuant to the IDEA.

17.     Defendant, School Board of Orange County, Florida is a public entity organized and existing under the laws of the State of Florida, with the capacity to be sued. Defendant is a LEA as defined by 20 U.S.C. § 1401(19)(A) and 34 C.F.R. § 330.28, and by virtue of receipt of

federal funding, is required to comply with the provisions of the IDEA. As an LEA, Defendant is required to make available a FAPE to Plaintiff. FAPE is defined as special education services that: (A) have been provided at public expense, under public supervision and direction, and without charge; (B) meet the standards of the State educational agency; (C) include appropriate preschool, elementary school, or secondary school education in the State involved; and (D) are provided in conformity with the Individualized Education Program (hereinafter "IEP") under 20 U.S.C. § 1414(d). 20 U.S.C. § 1401(9).

## JURISDICTION AND VENUE

18.     This is a civil action over which this Court has original jurisdiction under 28 U.S.C. § 1331 in that it arises under the IDEA as amended, 20 U.S.C. § 1400 et seq. Jurisdiction is expressly vested in this Court pursuant to 20 U.S.C. § 1415(i)(3)(A) and 29 U.S.C. § 1331. This Court has jurisdiction to hear pendent state claims under the doctrine of supplemental jurisdiction set forth at 28 U.S.C. § 1367.

19.     Venue in this Court is proper under 20 U.S.C. § 1391(b) because the Defendant is located within Orange County, which is within the jurisdiction of this judicial district, and all of the events or omissions that are the subject of this complaint occurred in Orange County.

20.     This Complaint is brought seeking relief for denial of rights under the IDEA. 20 U.S.C. § 1400 et seq. and Florida's Special Educational Law, § 1003.57 Fla. Stat.

21.     This case comes to this Court pursuant to 20 U.S.C. § 1415 (i)(2)(A) following a Final Order of an ALJ rendered on September 29,2020 in a due process action brought by Plaintiff on August 31, 2020 through DOAH under Docket number 20-3995E.

## PROCEDURAL HISTORY

22.     Pursuant to 20 U.S.C. §§1415(b)(6) and 1415(f)(1), whenever there is a disagreement between the parents and a school district regarding the identification, evaluation, or educational placement of the child, or the provision of a FAPE to the child, either party may present a complaint to be heard in an impartial administrative proceeding known as a "due process hearing," conducted by the state educational agency.

23.     As required by the IDEA, Florida established an impartial due process hearing procedure under a contract with the Division of Administrative Hearings ("DOAH") for the State of Florida. §§1003.57(1)(b) and 1003.5715(5), Florida Statutes, and Florida Administrative Code Rule 6A-6.03311(9)(u).

24.     On August 31, 2020, Plaintiff filed a request for a due process hearing that raised procedural and substantive claims pursuant to the IDEA. Plaintiff's request was promptly forwarded to DOAH on September 2, 2020, for further proceedings.  The Plaintiff requested, among other things, the following relief: An IEE to dispute the speech and language evaluation conducted by the LEA on March 4, 2020.

25.     On September 15, 2020, the School Board filed its Motion To Dismiss For Lack of Standing and For Being Moot, attaching the Student's individualized educational program, dated May 18, 2020. The Motion argued that the ALJ should dismiss the Complaint because: 1) the parent does not have standing or authority to file the request on behalf of the Student since the Student has reached the age of majority and the rights afforded to a parent under the Individuals with Disabilities Education Act (IDEA) have transferred to the Student; and 2) the parent is not entitled to an IEE because they had already received an IEE in relation to a speech language evaluation performed in 2018.

26. The Plaintiff filed a response to Defendant's Motion to Dismiss on September 22, 2020. Attached to that response was a fully executed DPOA which appoints the Plaintiff's mother and, in the alternative, the Plaintiff's aunt as agents to the Plaintiff. The property interests subject to this DPOA included educational and health care powers. Specifically, the DPOA gives Plaintiff's agent(s) the authority to do every act and thing whatsoever necessary, proper, or convenient to be done as fully as he might or could do for himself. Enumerated in this DPOA is the provision that the agent(s) are authorized to advocate for any services that are designed to provide Plaintiff with educational benefit and/or access to a free, appropriate public education in public school as provided for in the IDEA. Pursuant to 20 U.S.C. §§1415(b)(6) and 1415(f)(1), whenever there is a disagreement between the parents and a school district regarding the identification, evaluation, or educational placement of the child, or the provision of a FAPE to the child, either party may present a complaint to be heard in an impartial administrative proceeding known as a "due process hearing," conducted by the state educational agency. Therefore, Plaintiff's agent(s) are authorized pursuant to the fully executed DPOA, to file a complaint and appear on his behalf in a due process hearing as it relates to his special education rights as Plaintiff could have filed the due process complaint himself.

27. No due process hearing was held before DOAH. On September 29, 2020, ALJ Diane Cleavinger issued a Final Due Process Order (hereinafter "Order"). A copy of the Order was served on Plaintiff's representative on September 29, 2020.

28. The Order held that Plaintiff was incapacitated and therefore, was unable to sign legal documents. The ALJ found that the DPOA had no legal weight due to Plaintiff's incapacity. And therefore, the Plaintiff's agent had no authority to file a complaint and request a due process hearing on behalf of Plaintiff. The ALJ Dismissed the complaint without prejudice.

7

29.     Plaintiff has not been deemed incapacitated by a court with the appropriate authority to do so. The ALJ, acting sua sponte and without the benefit of a hearing, declared Plaintiff incapacitated, refused his DPOA, and dismissed the complaint without prejudice.

## FACTUAL ALLEGATIONS

30.     At all times relevant herein, Plaintiff was, and continues to be, eligible for and receiving special education including specially designed instruction and related services under the eligibility categories of Intellectual Disability (hereinafter ID) and Autism Spectrum Disorder (hereinafter ASD).

31.     When the cause for this Due Process Complaint occurred, Plaintiff was seventeen years of age, in the eleventh-grade, and enrolled in Orange County Public School District.  At the time the Due Process Complaint was filed, Plaintiff had reached the age of majority.  The rights transferred to Plaintiff upon reaching the age of majority and thus, Plaintiff was legally entitled to make his own decisions.

32.     Plaintiff exercised that legal right and appointed a power of attorney to assist him in educational decision making pursuant to Chapter 709 of the Florida Statutes.

33.     Presently Plaintiff is a twelfth-grade student at one of the Defendant's high schools.

34.     Prior to moving to the United States in 2018, Plaintiff lived his first sixteen years of life with his mother on a farm in the Philippines.  Plaintiff had only one year of formal education prior to moving to the United States.  Plaintiff attended a kindergarten class in the Philippines and then had no further formal education until moving to the United States and enrolling in the Defendant's school in February of 2018 at sixteen years of age.

35.     Plaintiff's native language is Tagalog and he speaks very little English.  His educational evaluations show Plaintiff working in the bottom first percentile as he cannot fluently speak, read, or write in English.

## IDEA-ADMINISTRATIVE APPEAL TO COURT

### Standard of Review

36.     Pursuant to the IDEA, "in any civil action brought under this paragraph the court: (i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of the party; and, (iii) basing its decision on the preponderance of the evidence, shall grant relief as the court determines is appropriate. 20 U.S.C. § 1415(i)(2).

37.     The district court is to conduct a de novo review of the ALJ's findings, and the "IDEA specifically provides that the court may take additional evidence and may fashion relief that the court deems appropriate." Sch. Bd. of Collier County v. K.C., 285 F.3d 977, 980 (11th Cir. 2002) (citing Weiss v. Sch. Bd. of Hillsborough County, 141 F.3d 990, 991-92 (11th Cir. 1998); 20 U.S.C. § 1415(i)(2)(B)). Whether a school district has satisfied the requirements of the IDEA by providing a FAPE is a mixed question of law and fact. R.L. v. Miami-Dade County School Bd., 757 F.3d 1173, 307 Ed. Law Rep. 596 (11th Cir. 2014).

38.     While a court, reviewing an administrative decision in an IDEA suit must consider the administrative findings carefully and endeavor to respond to the hearing officer's resolution of each material issue, the court is free to reject the administrative findings in whole or in part. Id. at 1181 (citing "G.J. v. Muscogee Cnty. Sch. Dist., 668 F.3d 1258, 1268 (11th Cir.2012)). At the same time, courts "owe some judicial deference to local administrative agency judgments ... though that's typically limited to matters calling upon educational expertise." Loren F. ex rel. Fisher v. Atlanta Independent Sch. Sys., 349 F.3d 1309, 1314 (11th Cir. 2003). Thus, in

deferring to the ALJ, the district court should review the records of the state administrative proceedings. Id. at 1314 (citing 20 U.S.C. § 1415(i)(2)(B)(i)).

39.     In enacting the IDEA, Congress sought to "ensure that all children with disabilities have available to them a free appropriate public education that emphasized special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. §1400 (d)(1)(A); Phillip C. v. Jefferson Cnty. Bd. of Educ., 701 F. 3d 691, 694 (11th Cir. 2012). The statute was intended to address the inadequate educational services offered to children with disabilities 20 U.S.C. §1400 (c)(2). To accomplish this objective, the federal government provides funding to participating state and local agencies which is contingent on the agency's compliance with the IDEA's procedural and substantive requirements. Doe v. Alabama State Dep't of Educ., 915 F. 2d 641, 654 (11th Cir. 1990).

40.     District school boards are required by the "Florida K-20 Education Code"[1] to "[p]rovide for an appropriate program of special instruction, facilities, and services for exceptional students as prescribed by the State Board of Education as acceptable." §§ 1001.42(4)(l) and 1003.57, Fla. Stat.

41.     Capacity is presumed in Florida unless an individual has been declared incompetent by a Florida Statute. § 744.33, Fla. Stat. (2020), outlines the procedure to have an adult deemed incapacitated in Florida. The statute requires that the family member or other concerned party file a petition to determine incapacity with a Florida court. That person must also file a petition for appointment of guardianship with the proper court of authority.

---

[1] Chapters 1000 through 1013, Florida Statutes.

42.     The guardianship court is the proper court of authority and is defined by statute as the "circuit court."  F.S. 744.102(5).

43.     Incapacity is a statutorily defined term. A person is legally incapacitated when determined by the guardianship court to lack the capacity to manage at least some property or to meet at least some of his or her essential health and safety requirements.  § 744.102(12), Fla. Stat. (2020) states, "In determining incapacity, the court shall consider the person's unique needs and abilities and may only remove those rights that the court finds the person does not have the capacity to exercise." § 744.331(6), Fla. Stat. (2020).  This determination must be done by examining the "exact areas in which the person lacks capacity to make informed decisions about care and treatment services or to meet the essential requirements for her or his physical or mental health or safety." §744.331(6)(a), Fla. Stat. (2020).  In addition, the court must find the exact nature and scope of the person's inability to take "actions necessary to provide the health care, food, shelter, clothing, personal hygiene, or other care without which serious and imminent physical injury or illness is more likely than not to occur." § 744.102(l2)(b), Fla. Stat. (2020). Pursuant to §744.331(f), Fla. Stat. (2020), the evaluations that must be completed prior to any determinations of capacity must include a physical exam, a mental health exam and a functional assessment. Thus, incapacity determinations are complex, require due process of law which necessitates evaluations, examination of records, testimony, finding of facts by a district court judge, by the determining if lesser restrictive options are available, and meeting the clear and convincing evidence burden of proof. § 744.331(6), Fla. Stat. (2020).

44.     The Division of Administrative Hearings is an agency created and controlled by statute.  Fla. Stat. §20.22; Fla. Stat. §120.65.

45.     The substantive jurisdiction of DOAH, likewise, is found in state statute. Fla. Stat. §20.22; Fla. Stat. §120.65.

46.     DOAH has no jurisdiction in §120.57(1) cases other than the jurisdiction of the referring agency.

47.     An ALJ may not make determinations of substantial interest of a party on an unadopted rule.  §120.57(1)(e)(1).

48.     The Florida Department of Education has not adopted a rule regarding the determination of incapacity.  Therefore, the ALJ has no authority or jurisdiction to make such determinations.  The Florida Legislature has given that sole jurisdiction to the guardianship court which defined by statute is the "circuit court."  F.S. 744.102(5).

49.     By adjudicating Plaintiff incapacitated, sua sponte, in an ALJ final order, without jurisdiction to do so, and without due process of law, the ALJ has overstepped her authority and that overreach amounts to a deep deprivation of Plaintiff's personal liberty and property interests. When striping individuals of their liberty and property interests, much process is due.  Plaintiff was not afforded any due process of law. The Court held no hearings, made no findings of fact to sufficiently address the needs of the appellant, did not considered alternatives to guardianship, reached beyond her judicial authority by adjudicating Plaintiff as incapacitated, and refusing his DPOA which is the least restrictive appropriate alternative to Guardianship.

50.     The Plaintiff has the right to make decisions in all matters commensurate with the with his ability to do so.  *Howard v. Howard*, 193 So. 3d 987, 989 (Fla. Dist. Ct. App. 2016). The Plaintiff acted on that right by appointing a POA to assist him in his educational decision making.  The ALJ overreached her authority by refusing the DPOA without the court of proper authority finding Plaintiff to be legally incapacitated.

51.     The law supports a finding in favor of the Plaintiff as the ALJ overstepped her authority by adjudicating Plaintiff as incapacitated, outside of her jurisdiction, and without due process of law.

## CLAIM FOR RELIEF

52.     Plaintiff has exhausted his administrative remedies and is a party aggrieved by the Order within the meaning of 20 U.S.C. § 1415(i)(2)(A). Plaintiff is seeking reversal of the Order.

53.     The ALJ overreached her authority in holding that Plaintiff was incapacitated and thus refusing his DPOA.

54.     The Plaintiff requests that this Court enter an Order requiring that the Administrative Record be filed with the Court.

55.     The Plaintiff respectfully request that this Court reverse the September 29,2020 order adjudicating Plaintiff as incapacitated.


Respectfully submitted,

Wendy West
Attorney for Plaintiff
Disability Rights Florida
1930 Harrison Street, Suite 104
Hollywood, FL 33020
wendyw@disabilityrightsflorida.org
850-617-9780
Fax: 850-488-8640
FBN:  1002891


Ann Marie Cintron-Siegel
Attorney for Plaintiff
Disability Rights Florida
1930 Harrison Street, Suite 104
Hollywood, FL 33020
anns@disabilityrightsflorida.org

1-800-342-0823
Fax: 850-488-8640
FBN: 0166431

***Attorneys for Plaintiff***

By: *Wendy West*
   Wendy West

By: *Ann Marie Cintron-Siegel*
   Ann Marie Cintron-Siegel

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been furnished to counsel of record for Defendant, Sarah Wallerstein-Koren, Esq. via email electronic mail on this 14th day of December 2020.

Respectfully submitted,

/s/*Wendy West*
Wendy West, Esq.
Florida Bar Number: 1002891
Disability Rights Florida
Counsel for Plaintiff
1930 Harrison Street, Suite 104
Hollywood, FL 33020
wendyw@disabilityrightsflorida.org
850-617-9780
Fax: 850-488-8640

14